# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KANDI MORRIS,

  *Plaintiff*,

 v.

UNITED STATES DEPARTMENT OF JUSTICE,

  *Defendant*.

Civil Action No. 17-198 (RDM)

## MEMORANDUM OPINION

  Plaintiff Kandi Morris, proceeding *pro se*, brings this action against her former employer, the U.S. Department of Justice, for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Equal Pay Act of 1963, 29 U.S.C. § 206(d). Morris claims that she was terminated from her position as a FOIA Specialist "without just cause" and that, while she was employed at the Department, she "did not receive pay commensurate with [her] education and experience" and was paid "at a rate lower than [her] male counterparts." Dkt. 1 at 1. The Department moves to dismiss, or in the alternative, for summary judgment, on two grounds: first, as a procedural matter, Morris failed to exhaust her administrative Title VII remedies in a timely manner, and, second, as a substantive matter, the uncontroverted evidence demonstrates that she was paid at the same rate as her male counterparts. The Court agrees on both counts and will, accordingly, grant summary judgment in favor of the Department.

## I. BACKGROUND

For the purpose of evaluating the Department's motion for summary judgment, the following uncontroverted facts are construed in the light most favorable to Morris as the nonmoving party. *See Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006).

Morris, who is an African-American woman, worked at the Department of Justice as a FOIA Specialist with the Office of Information Policy ("OIP") for approximately seven months, until she was terminated in early 2011. Dkt. 10 at 3–4; Dkt. 10-2 at 5. She was hired under the Federal Career Intern Program ("FCIP"), which "allowed agencies to appoint qualified individuals in entry level positions in the excepted services and, upon successful completion of a two[-]year internship period, convert those . . . appointments to career or career-conditional positions in the competitive service." Dkt. 9 at 3 (Def.'s SUMF ¶ 2); Dkt. 13 at 5 (Pl.'s SUMF ¶ 36). FCIP employees were eligible for a grade increase after one year of service. Dkt. 10-1 at 128 (Pustay Interrogatory).

When Morris was offered the FOIA Specialist position under the FCIP, she objected to the starting salary, explaining that the job advertisement stated that the "[s]alary [would] be determined [based on] educational level, GPA, and work experience," Dkt. 13 at 2 (Pl.'s SUMF ¶ 2); Dkt. 10-1 at 253, and that, based on those measures, she was entitled to a higher salary, Dkt. 13 at 2 (Pl.'s SUMF ¶¶ 3, 5). As Morris concedes, *id.* (Pl.'s SUMF ¶ 3), her OIP contact, Laurie Day, responded to this complaint by explaining that "all FOIA Specialists were started at the same grade regardless of educational level, GPA[,] or work experience." *Id.* (Pl.'s SUMF ¶ 3). Day, moreover, later confirmed under the penalty of perjury that "[a]ll candidates hired under the [FCIP] in the Office of Information Policy were hired at the GS-7 level." Dkt. 10-1 at 148 (Day Interrogatory). As Day explained, "when OIP first began to use the FCIP, . . . the Justice

Management Division . . . advised that all candidates had to start at either the GS-5 or GS-7 level because the FCIP required that individuals show progressive advancement on the FOIA Specialist career ladder [which ran from GS-5 to GS-11] in order to successfully complete the program and be converted to a competitive service appointment." *Id.* at 149. Although Morris contends that by slotting her at the GS-7 level OIP "disregarded [her] educational level, GPA[,] [and] work experience," Dkt. 13 at 2 (Pl.'s SUMF ¶ 5), she does not controvert the Department's assertion, Dkt. 9 at 4 (Def.'s SUMF ¶ 3), or the uniform testimony in the administrative process, that all of the FOIA Specialists that OIP hired under the FCIP "were appointed at the GS-7, Step 1 level," *id.*; *see also* Dkt. 10-1 at 124 (Pustay Interrogatory); *id.* at 148 (Day Interrogatory); *id.* at 136 (Mallon Interrogatory); *id.* at 165 (Douglas Affidavit); *id.* at 179 (Souser Affidavit); *id.* at 193 (Smith Affidavit); *id.* at 204 (Logan Affidavit) ("To my knowledge, if I can recall, I think it's either a 5 or a 7."). Morris attests that, despite the GS-7 pay grade, she accepted the position on the understanding that "after one year, the pay would automatically increase to a GS-9 [level] and[,] after the second year, it would go to a GS-11 [level]." Dkt. 10-1 at 100 (Morris Affidavit). The Department, in turn, does not dispute that these grade increases were "available," but asserts that they were not "automatic" and, instead, were "based off of performance." Dkt. 10-1 at 166 (Hibbard Affidavit).

Morris never reached the one-year mark, however. According to Morris, the FCIP was terminated on December 27, 2010, and those serving "under the FCIP as of March 1, 2011," were "converted to the competitive service." Dkt. 13 at 2–3 (Pl.'s SUMF ¶¶ 7–8); *see also* Exec. Order No. 13562, 75 Fed. Reg. 82,585 (Dec. 27, 2010). On January 26, 2011, between the termination of the FCIP and the March 1 conversion date, Morris was told by OIP's Chief of Staff, Carmen Mallon, that she "was being terminated from the Department of Justice for budget

3

reasons." *Id.* at 3 (Pl.'s SUMF ¶ 14). Morris asked "for a written statement [of] the reason for [her] termination," but OIP leadership declined that request and, instead, offered Morris "the option" of resigning. *Id.* (Pl.'s SUMF ¶ 16). Morris, in turn, declined and contacted the Justice Management Division ("JMD") "to report the unfair treatment and to ask why her reasons for termination would not be committed to writing." *Id.* at 3–4 (Pl.'s SUMF ¶ 19). Although JMD did not respond to that request, she was eventually presented with a "one-page document" that was purportedly from JMD, which "stated that [Morris] was being terminated for poor performance." *Id.* at 4 (Pl.'s SUMF ¶¶ 26, 29); *see* Dkt. 10-1 at 46. Although Morris's SF-50, notice of personnel action, states that she was terminated because her FCIP term had come to an end, Dkt. 10-1 at 48, Mallon purportedly placed the one-page document, which cited poor performance, in Morris's file, Dkt. 13 at 5 (Pl.'s SUMF ¶ 32). The actual one-page document, which the Department produced in support of its motion, reflects aspects of both accounts. It asserts that OIP management declined to convert Morris's FCIP position to a position in the competitive service because she had "not demonstrated performance of the quality expected for employees in the FCIP program." Dkt. 10-1 at 46. In any event, all agree that Morris was terminated on February 10 or 11, 2011. Dkt. 13 at 4 (Pl.'s SUMF ¶ 31); Dkt. 9 at 4 (Def.'s SUMF ¶ 5).

On February 8, 2013, nearly two years after her termination, Morris filed an EEO complaint with the Department, alleging that she was discriminated against based on her sex and race because (1) she was paid "at a rate at or below similarly situated white males with less education," and (2) she was told that she was terminated because the FCIP program came to an end, but "two white women were hired" by OIP. Dkt 10-1 at 26. Morris contends that she did not file a complaint until earlier because it was not until September 14, 2012, that she "received

4

information that white males at OIP were being paid more than black females with more education." *Id.* at 39; *see also id.* at 304. She asserts that, on that date, she "checked a website with publicly available salary information," *id*. at 39, and also asserts that a "former co-worker . . . alerted [her] to the website" and to the fact that the co-worker had "filed her own disparate pay claim, among[] other violations, against OIP and [had] prevailed," Dkt. 13 at 5 (Pl.'s SUMF ¶ 39).

The Department's EEO staff agreed to investigate Morris's disparate pay claim, but dismissed her termination claim on the ground that it was untimely. As the EEO staff explained, the record indicated that Morris was informed by OIP management at the time she was terminated that she had a "right to appeal their decision through the Department's Equal Employment Opportunity . . . Complaint process and [informed] of the time for contacting an EEO Counselor." Dkt. 10-1 at 71. Despite this notice, however, Morris did not "initially contact[] the [EEO] Staff" until "October 25, 2012, 594 days after the date of the alleged harm," well beyond the 45-day period specified by the governing federal regulation, 29 C.F.R. § 1614.105(a)(1). Dkt. 10-1 at 70. Although Morris argued there—as she argues here—that she did not become aware of the pay disparity until September 14, 2012, the EEO staff concluded that this revelation failed to explain Morris's delay in initiating the counseling process with respect to her separate termination claim. *Id.* at 70–71. The EEO staff did agree, however, to initiate an investigation regarding the disparate pay issue and to consider her other contentions "as background material to the extent it [was] relevant to" that claim. *Id.* at 72.

In investigating Morris's disparate pay claim, the EEO staff interviewed multiple witnesses and collected substantial information. *See* Dkt. 10-1. After a counseling period, Morris filed a formal administrative complaint and, on August 31, 2013, she requested that her

5

claim be heard by an Administrative Judge ("AJ"). Dkt. 10-2 at 4. As a discovery sanction, the AJ dismissed Morris's hearing request, but he did not dismiss her underlying claims and, instead, remanded the case to the Department for issuance of a decision. *Id.* After that decision was entered, the matter was referred to the Department's Complaint Adjudication Office, which issued a "final agency decision" on December 9, 2014. *Id.* at 4–19. That office agreed with the EEO staff and AJ that Morris's termination claim was untimely but that her disparate pay claim was timely. *Id*. at 5. Considering that claim under both Title VII and the Equal Pay Act, the Complaint Adjudication Office found that all of the relevant witnesses testified "that all FCIP FOIA Specialists began as GS-7s" and that the other evidence confirmed their testimony. *Id.* at 17. Morris, moreover, "was fired from her position before she had served a full year with OIP, so she could not have been promoted [pursuant to the governing] FCIP[] policies." *Id.* Although white and male FCIP FOIA Specialists were eventually promoted, they attained the required tenure. *Id.* Accordingly, the Complaint Adjudication Office concluded that "the record contains no evidence of disparate . . . pay." *Id.*

Morris then exercised her right to appeal that decision to the Equal Employment Opportunity Commission ("EEOC"), which (1) noted that Morris "d[id] not challenge the Agency's dismissal of [her] claim" that "the Agency discriminated against her on the bases of race . . . and sex" when she "was fired from her FCIP position" and (2) agreed with the Department's Complaint Adjudication Office that Morris "failed to establish that the Agency subjected her to discrimination with regard to pay" and that "[t]he record shows that [Morris] did equal work for equal pay." *Morris v. Lynch*, EEOC Decision No. 0120150908, 2016 WL 2864997, at *1, 3, 5 (May 6, 2016). With respect to the latter claim, the EEOC stressed that Morris failed to identify a single colleague who had been hired as a FOIA Specialist under the

6

FCIP above a starting grade of GS-7 and that Morris's white and male colleagues in the FCIP program did not reach a higher pay grade until after they had at least one year's experience. *Id.* at *5.

On January 31, 2017, Morris commenced this suit. *See* Dkt. 1. Her single-page complaint contains little substance, alleging only that she "was terminated from the FCIP and the U.S. Department of Justice without just cause" and that, "[w]hile employed[,] [she] did not receive pay commensurate with [her] education and experience and was paid at a rate lower than male counterparts in violation of the Equal Pay Act and Title VII." Dkt. 1 at 1. In lieu of filing an answer, the Department has moved to dismiss the complaint or, in the alternative, for summary judgment, arguing that Morris failed to timely exhaust her administrative remedies or that her claims fail on the merits. *See* Dkt. 9. For the reasons explained below, the Court agrees and will grant summary judgment in favor of the Department.

## II. LEGAL STANDARD

The Department moves to dismiss and, in the alternative, for summary judgment. Both of the defenses it raises, however, are best considered under Federal Rule of Civil Procedure 56. Under that standard, the moving party is entitled to summary judgment if it can "show[] that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When, as here, the plaintiff bears the ultimate burden of proof, but the defendant has moved for summary judgment, the defendant "bears the initial responsibility" of "identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it could affect the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if the evidence is such that a

7

reasonable jury could return a verdict for the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court, moreover, must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *See Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).

If the moving party carries this initial burden, the burden then shifts to the nonmoving party to show that sufficient evidence exists for a reasonable jury to find in the nonmoving party's favor with respect to the "element[s] essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (internal quotation marks and citations omitted). The nonmoving party's opposition, accordingly, must consist of more than unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. That is, once the moving party carries its initial burden on summary judgment, the nonmoving party must provide evidence that would permit a reasonable jury to find in its favor. *See Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). If the nonmoving party's evidence is "merely colorable" or "not significantly probative," the Court should grant summary judgment. *Liberty Lobby*, 477 U.S. at 249–50.

Because Morris is proceeding *pro se*, the Court will "liberally construe[]" the complaint and response and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### III. ANALYSIS

**A.     Termination Claim**

Morris fails to identify the statutory basis for her wrongful termination claim, merely averring that she "was terminated from the FCIP and the U.S. Department of Justice without just cause." Dkt. 1 at 1. Reviewing her complaint in light of the administrative record, however, the

8

Court concludes that her termination claim is best understood as premised on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16. The Department concurs with this understanding of the claim, but argues that the claim must be dismissed for failure to timely exhaust administrative remedies. Dkt. 9 at 13–14. The Court agrees.

Before bringing a claim under Title VII, "federal employees must administratively exhaust their claims." *Coleman v. Duke*, 867 F.3d 204, 206 (D.C. Cir. 2017). "To start the administrative process, an employee must contact an [EEO] [c]ounselor at [her] employing agency with 45 days of the alleged discriminatory conduct." *Id.* (citing 29 C.F.R. § 1614.105(a)(1)). The agency's EEO staff then investigates the claim and, if the claim is not resolved through the counseling process, the counselor must so notify the employee, who then has fifteen days to file a formal complaint. *See* 29 C.F.R. § 1614.105. Although not a jurisdictional bar to suit, *see Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011); *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 174 (D.D.C. 2016), courts must generally dismiss a Title VII claim brought against federal agencies if the employee failed to "'initiate contact' with an EEO Counselor in her agency 'within 45 days of the date of the matter alleged to be discriminatory.'" *Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008) (quoting 29 C.F.R. § 1614.105(a)(1)). Tolling is appropriate, however, when the plaintiff "did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred." 29 C.F.R. § 1614.105(a)(2); *see also Loe v. Heckler*, 768 F.2d 409, 418–19 (D.C. Cir. 1985). "In other words, [an action is barred for failure to exhaust] if the plaintiff knew, or should have known, about the alleged discriminatory action 45 days prior to" initiating the EEO process but failed to do so. *Johnson v. Gonzales*, 479 F. Supp. 2d 55, 59 (D.D.C. 2007) (quoting *Aceto v. England*, 328 F. Supp. 2d 1, 7 (D.D.C. 2004)). But, the 45-day clock does not "start[] to run"

until the plaintiff has reason to believe "that [s]he has been the victim of discrimination." *Id.*; *see also Noisette v. Geithner*, 693 F. Supp. 2d 60, 66 (D.D.C. 2010).

This rule is dispositive of Morris's termination claim. She was terminated on February 10 or 11, 2011, Dkt. 13 at 4 (Pl.'s SUMF ¶ 31); Dkt. 9 at 4 (Def.'s SUMF ¶ 5), and did not contact the Department's EEO counselor until October 25, 2012, Dkt. 10-1 at 31—over a year and a half later. Morris's principal response—which she offered unsuccessfully in the administrative process and renews now—is that she "filed a timely complaint with" the Department's EEO staff "upon learning of the disparate pay." Dkt. 13 at 5 (Pl.'s SUMF ¶ 39). She further explains that a "former co-worker . . . alerted [her] to the website displaying salary information" and that the co-worker had "filed her own disparate pay claim . . . against OIP and [had] prevailed." *Id.* That account might explain why Morris waited so long to raise her disparate pay issue, but it says nothing about her separate claim that she was terminated based on her race or sex. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire . . . [e]ach . . . constitute[] a separate actionable 'unlawful employment practice,'" and a plaintiff "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). The same is true with respect to tolling the time limit for the exhaustion of administrative remedies; absent sufficient factual overlap, the tolling of the EEO process for one discrete claim does not toll the process for other claims. *See Burkes v. Holder*, 953 F. Supp. 2d 167, 174–75 (D.D.C. 2013) ("[A] Title VII plaintiff must timely exhaust administrative remedies for each discrete act alleged." (citing *Morgan*, 536 U.S. at 110)). Because Morris offers no reason to conclude that her termination and disparate pay claims turn on overlapping or interrelated facts, the premise

that she learned about pay disparities many months after she was terminated does not save her termination claim.

Morris also suggests that her efforts to initiate the EEO counseling process were frustrated because she "contacted JMD" prior to her departure from the Department, but "none of her calls or emails were returned until after her termination was effective." Dkt. 13 at 5 (Pl.'s SUMF ¶ 38). Had JMD taken more than 45 days to respond, and had Morris sought—unsuccessfully—to contact an EEO counselor to raise her allegation that she was terminated based on her race and/or sex, that contention would carry significant weight. But that is not what she says; rather, she merely asserts that JMD did not return her messages until after she was terminated.

Finally, Morris asserts that she did "dispute[] the reason for [her] termination" with "both JMD and the Office of Special Counsel." *Id.* She does not allege, however, that she ever suggested that the real reasons for her termination had to do with her race and/or sex. From what the Court can discern, it appears that Morris's principal objection was that she was first told that she was being terminated for budgetary reasons, only to be told later that her termination was for reasons of performance. *See* Dkt. 13 at 3–4 (Pl.'s SUMF ¶¶ 14, 29). That discrepancy is seemingly answered by the letter that she declined to sign, which explained that she was being terminated because the program was coming to an end and her performance was not sufficient to justify the conversion of her internship to a position in the competitive service. Dkt. 10-1 at 46. For present purposes, however, the cogency of that explanation is not at issue. Instead, the question is merely whether Morris raised a discrimination claim with an EEO counselor during the 45-day window following her termination, and there is no evidence that she did.

Accordingly, because Morris failed to initiate contact with an EEO counselor within 45 days of her termination, and because she has not identified any reason why she could not have initiated that process in a timely manner, her termination claim must be dismissed for failure to timely exhaust administrative remedies.

**B.      Disparate Pay Claim**

Morris also alleges that, "[w]hile employed" by the Department, she "did not receive pay commensurate with [her] education and experience and was paid at a rate lower than male counterparts in violation of the Equal Pay Act and Title VII." Dkt. 1 at 1. "In order to make out a case under the [Equal Pay] Act, the [plaintiff] must show that [her] employer pays different wages to employees of opposite sexes 'for equal work on jobs[,] the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1)). "Once [the] plaintiff[] meet[s] [her] burden, the burden then shifts to defendants to show that the pay differential was justified under one of the exceptions to the Act." *Thompson v. Sawyer*, 678 F.2d 257, 271 (D.C. Cir. 1982) (citation omitted). Those exceptions cover pay differentials that are justified by "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) . . . any other factor other than sex," 29 U.S.C. § 206(d)(1). A plaintiff may also seek relief for a pay disparity under Title VII, so long as she satisfies the distinct requirements of the statute and does not seek to recover twice for the same wrong. *See Goodrich v. Int'l Broth. of Elec. Workers, AFL-CIO*, 712 F.2d 1488, 1490 n.2 (D.C. Cir. 1983). Under the Bennett Amendment to Title VII, these requirements include the four affirmative defenses applicable under the Equal Pay Act, but they do not include the "equal work" requirement. *County of Washington v. Gunther*, 452 U.S. 161, 167–81 (1981).

12

As in any Title VII case, the plaintiff must show that her employer discriminated against her "with respect to [her] compensation" or other "terms, conditions, or privileges of employment, because of [her] race . . . or sex." 42 U.S.C. § 2000e-2(a)(1); *see also id*. at § 2000e-16.

Whether considered under the Equal Pay Act or Title VII, Morris's disparate pay claim fails because the uncontroverted evidence shows that all FOIA Specialists employed by OIP pursuant to the FCIP were paid precisely the same amount as she was during the relevant time period. As required to meet its burden at summary judgment, the Department has come forward with competent evidence demonstrating that "[d]uring the time the FCIP was available as an appointing authority, OIP hired eight FOIA Specialists using the FCIP, . . . and all of these FOIA Specialists"—including Morris—"were appointed at the GS-7, Step 1 level." Dkt. 9 at 4 (Def.'s SUMF ¶ 3). The Director of OIP testified, for example, that "[a]ll FCIP employees at OIP, male and female, entered at the GS 7, Step 1 level." Dkt. 10-1 at 129 (Pustay Interrogatory). The OIP Chief of Staff testified that "OIP hired all FCIP candidates at [the GS-7] pay grade." *Id.* at 140 (Mallon Interrogatory). OIP's Chief of the Initial Request Staff testified that "[a]ll candidates hired under the [FCIP] in the Office of Information Policy were hired at the GS-7 level." *Id.* at 148 (Day Interrogatory). The Deputy Chief of the Initial Request Staff concurred that all FOIA Specialists hired under the FCIP started at the GS-7 pay grade. *Id.* at 165 (Hibbard Affidavit). A Supervisory Human Resource Specialist from JMD shared this understanding, *id.* at 179 (Souser Affidavit), as did another Human Resources Specialist, *id.* at 193 (Smith Affidavit). And, a Senior FOIA Specialist at OIP recalled that all FOIA Specialists hired by OIP under the FCIP started at "either a 5 or a 7" GS level. *Id.* at 204 (Logan Affidavit). Records attached to the Department's motion, moreover, further confirm that those FOIA Specialists

13

hired under the FCIP were initially paid at the GS-7 level. *See* Dkt. 10-1 at 267, 275, 288, 297 (listing the appointment grades for four newly hired FCIP FOIA Specialists as GS-7).

After the Department filed its motion to dismiss or, in the alternative, for summary judgment, Dkt. 9, the Court cautioned Morris—who is proceeding *pro se*—that the Court would "accept as true any factual assertion supported by the affidavits (or declarations) or other documentary evidence submitted with the motion, unless [Morris] submit[ted] [her] own . . . evidence contradicting th[at] factual assertion," Dkt. 11 at 1; *see also* Fed. R. Civ. P. 56(a). Morris responded with a statement of facts "as to which there remains a genuine dispute," in which she admitted certain facts, expressly controverted others, and simply failed to address others. Dkt. 13. Most significantly for present purposes, she fails to respond to the Department's contention that all new FCIP employees started at the GS-7, Step 1 level, and she offers no evidence purporting to controvert the numerous statements offered by the Department, all of which were made in the form of declarations pursuant to 28 U.S.C. § 1746.

The Supreme Court "has said that summary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party." *Liberty Lobby, Inc.*, 477 U.S. at 251 (internal quotation marks omitted). That standard is easily satisfied here. Morris alleges that she was "paid at a rate lower than [her] male counterparts in violation of the Equal Pay Act and Title VII," Dkt. 1 at 1. The uncontroverted evidence, however, establishes that she—like every other FOIA Specialist hired under the FCIP—started at the GS-7, Step 1 level. To be sure, there is evidence that other specialists eventually received promotions to higher grades, *see* Dkt. 10-1 at 268, 270, 277, 279, 291, 302, but they did so only after at least a year of service in grade. Morris, in contrast, was terminated after seven months on the job, and thus never reached the one-year threshold. *See* Dkt. 13 at 2 (Pl.'s SUMF ¶ 6). She, accordingly,

14

cannot establish that the Department paid "different wages to employees of opposite sexes," as required to prevail on an Equal Pay Act claim, *Corning Glass Works*, 417 U.S. at 195, or that the Department discriminated against her "with respect to [her] compensation" based on her race or sex, as required to prevail under the related terms of Title VII, 42 U.S.C. § 2000e-2(a)(1), *see also id*. at § 2000e-16.

Morris also alleges that she "did not receive pay commensurate with [her] education and experience." Dkt. 1 at 1. To the extent the claim is premised on the notion that she received less than she deserved because of her sex or race, it fails for the reasons described above. The Department has offered uncontroverted evidence that it had a firm policy of paying all new FOIA Specialists hired under the FCIP at the same GS level, regardless of any other considerations. As the Chief of the OIP's Initial Request Staff testified, that decision was premised on the advice from JMD

> that all candidates had to start at either the GS-5 or GS-7 level because the FCIP required that individuals show progressive advancement on the FOIA Specialist career ladder in order to successfully complete the program and be converted to a competitive service appointee. The FOIA Specialist career ladder goes from GS-5 to GS-11. Because the career ladder ended at the GS-11 level, no one could start at the GS-9 level and show successful advancement through two years in the program.

Dkt. 10-1 at 149–50 (Day Interrogatory). That testimony, and other testimony to the same effect, is uncontroverted and thus controlling for present purposes.

Morris does allude in her opposition to evidence that another female employee at OIP did not receive grade increases at the same rate as the male hires. Dkt. 13 at 5 (Pl.'s SUMF ¶ 39). The personnel records attached to the Department's motion, moreover, appear to show that one black female hired as a FOIA Specialist under the FCIP program remained at a GS-7 level for over two years, Dkt. 10-1 at 280, 286, 291, despite holding a masters' degree, *id.* at 280, while it

15

appears that two men hired under the FCIP had only bachelors' degrees, *id.* at 261, 271, yet received annual promotions, *see id.* at 261, 267–71, 275–79. But, even assuming that Morris's former colleague was the victim of pay discrimination after her first year at OIP, that would not undercut the Department's uncontroverted showing that *Morris* was treated just like all other new FCIP hires, regardless of their sex or race. Accordingly, construed in the light most favorable to Morris, the uncontroverted evidence demonstrates that she was not paid less than any of her counterparts.

Finally, even assuming that Morris was more qualified than others who were paid at the GS-7 level, she still has not controverted the Department's showing that the pay scale for new FCIP hires was "based on [a] factor other than sex." *Id.* As explained above, the evidence shows that the pay scale was not tied to employees' qualifications, but rather was based on a desire to provide room for "progressive advancement" as part of the FCIP. Dkt. 10-1 at 149 (Day Interrogatory). That policy may have undervalued Morris's education and experience, and it may have been in some tension with the job listing's notation that "[s]alary will be determined by educational level, GPA, and work experience."[1] Dkt. 10-1 at 253. But the uncontroverted evidence establishes that it was not based on sex or race.

The Department has, accordingly, carried its initial burden on summary judgment, and Morris has failed to offer any evidence that would permit a reasonable jury "to find that [the Department] intentionally discriminated against the employee" on the basis of her race or sex, *Wilson v. Cox*, 753 F.3d 244, 247 (D.C. Cir. 2014) (internal quotation marks and alterations omitted), or that she was paid less than "employees of the opposite sex," 29 U.S.C. § 206(d)(1).

---

[1] Morris acknowledges that she was told at the time she started at OIP that "all of the FOIA Specialists were brought in at a Grade 7 regardless of education or experience." Dkt. 10-1 at 100 (Morris Affidavit).

## CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion to dismiss or, in the alternative, for summary judgment, Dkt. 9.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: March 27, 2018